**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

**CIVIL NO. 3:05CV402-T-02
(3:02CR195-T)**

| | |
|---|---|
| **JOHN CHARLES BARKLEY,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **MEMORANDUM AND** |
| ) | **O R D E R** |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Petitioner's document entitled, "Section 2255 Motion for Relief to Set Aside, Correct or Vacate Sentence," filed September 19, 2005; on the Government's answer and motion for summary judgment, both filed November 23, 2007; and on Petitioner's response thereto, filed December 18, 2007. For the reasons stated herein and in the Government's filings, Petitioner's § 2255 motion is denied and this matter is dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

On August 9, 2002, the Petitioner was charged with three separate counts of bank robbery, each in violation of 18 U.S.C. § 2113(a). **Bill of Indictment, filed August 9, 2002**. On October 4, 2002, Petitioner appeared with counsel before the Magistrate Judge for a Rule 11 hearing to plead guilty to the charges in the indictment without a plea agreement. At the outset of the plea and Rule 11 proceeding, the Court placed Petitioner under oath and subsequently engaged him in its standard, lengthy colloquy to ensure that his guilty pleas were knowingly and voluntarily made and entered. **Rule 11 Inquiry and Order of Acceptance of Plea, filed October 4, 2002**.

By his sworn responses to the Court's numerous questions, Petitioner acknowledged that he had received a copy of the indictment and had discussed the charges and possible defenses with counsel; and that he understood those charges along with their statutory maximum terms of 20 years imprisonment. ***Id.*, at 1, 3**. Petitioner's answers further established that he and counsel had discussed how the Sentencing Guidelines might be applied in his case; that he understood that the Court would not be able to determine his sentence until after his presentence

report was prepared; that he understood in some circumstances, he could receive a sentence that was different from that called for by the Guidelines; and that he understood even if he received a sentence which was more severe than he was anticipating, he would not have a right to withdraw his guilty pleas. *Id., at 2*.

Petitioner's answers also established that he was entering guilty pleas because he was, in fact, guilty of the robberies; that no one had made him any promises of leniency or a light sentence in order to induce his guilty pleas; and that no one had threatened, intimidated, or otherwise forced him into pleading guilty. *Id., at 3*. Finally, Petitioner's answers established that he was satisfied with the services of his attorney, and he had no questions or comments for the Court. *Id.* Thus, at the conclusion of that proceeding, the Court found Petitioner had entered his pleas knowingly and voluntarily and accepted Petitioner's guilty pleas. *Id., at 4*.

On July 23, 2003, the undersigned conducted Petitioner's factual basis and sentencing hearing. Petitioner objected to a two-point enhancement under U.S.S.G. § 2B3.1(b)(2)(F) for having made a death threat to one or more tellers, and to being sentenced as a career offender, claiming that he neither received nor waived counsel in connection with the

1990 assault on a female conviction that was being considered as a basis, in part, for the career offender designation.[1]  *See* **Exhibit 4, Presentence Investigation Report, *attached to* Government's Answer and filed under seal, ¶¶ 33, 49; Exhibit 5, Transcript of Sentencing Hearing, *attached to* Government's Answer, at 2-3, 17**.

However, the Court found the evidence was sufficient to support the enhancement for the death threats and overruled Petitioner's objection to that enhancement.  *Id*. **at 16**.  Furthermore, after hearing Petitioner's testimony concerning the circumstances surrounding the 1990 assault conviction, the Court found that he had failed to meet his burden of overcoming the "presumption of regularity" which attached to the state court's judgment imposing that conviction.  *Id*., **at 35-36**.  The Court further determined:  1) that Petitioner's only evidence consisted of his own "sketchy" testimony, which did little to "show a clear recollection that he did not waive counsel or was not advised of his right to counsel"; 2) that by 1990, Petitioner had been convicted of or pled guilty to at least 12 prior criminal offenses, thereby "indicating to the Court that [Petitioner] knew

---

[1] In addition, Petitioner objected to an enhancement for having injured a bank employee, but eventually withdrew that objection.

and clearly understood from prior experience the right to an attorney"; 3) that in light of Petitioner's "serious criminal history" and his denial of the threats he made to the bank tellers, he was "not a believable witness, and the Court [could not] under the facts . . . find that [Petitioner] gave completely truthful testimony" before the Court; and 4) that Petitioner had "a serious drug problem and from time to time memory problems" as a result of that drug abuse, thereby "suggest[ing] a further lack of reliability for his testimony." *Id*. Consequently, the Court overruled this objection and adopted the presentence report's other calculations, including findings that as a career offender, Petitioner's total offense level was 29, his criminal history category was VI, and he had a resulting sentencing range of 151 to 188 months imprisonment. *Id.*, **at 16, 36-37**.

After hearing from counsel and the Petitioner, the Court imposed a sentence of 166 months imprisonment for each of the three charges to run concurrently. **Judgment in a Criminal Case, filed August 18, 2003**.

Petitioner timely appealed his case to the Fourth Circuit Court of Appeals, arguing that this Court erred in imposing the two-point enhancement for the death threats against the bank tellers and in finding that his 1990 assault conviction properly subjected him to sentencing as a

career offender.  ***United States v. Barkley*, 100 F. App'x 899, 900 (4th Cir. 2004)**.  However, the appellate court determined that the two-point enhancement was supported by the record, and that the district court's finding that Petitioner's credibility was lacking in regards to his claim that he was denied his right to counsel for the 1990 assault conviction was proper.  *Id*. **at 900-01**.  Thus, Petitioner's conviction and sentence were affirmed.  *Id*. **at 901**.

In his motion to vacate, Petitioner alleges his trial attorney was ineffective for: 1) having failed to preserve, under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), his challenge to the two-point enhancement for the death threat; 2) allowing him to plead guilty without the benefit of a plea agreement; and 3) failing to investigate and obtain proof of the unconstitutionality of his 1990 assault conviction and for failing to attack that conviction in state court.  **Petitioner's Motion, at 3-4**.  Petitioner also argues that both this Court and the Fourth Circuit plainly erred in their evaluations of his testimony about the 1990 conviction.  *Id*. **at 4-5**.  In support of his motion, Petitioner submitted letters from Joyce Causby, his mother, and two of her friends, Cande S. Kirk and Mamie Johnson.

At the Court's direction, on November 23, 2007, the Government filed its answer and motion for summary judgment, exclusively addressing Petitioner's claim that his attorney failed to investigate and secure proof that his 1990 assault conviction was obtained in violation to Petitioner's right to counsel. **See Order, filed September 25, 2007**. In arguing for dismissal of Petitioner's claims, the Government alleges Petitioner has failed to establish any credible facts that his trial counsel was deficient or that counsel's performance resulted in prejudice to him.

Moreover, the Government placed Petitioner on notice that the letters he submitted in support of his motion to vacate were not executed under penalty of perjury, or otherwise verified as true and correct. **See Government's Answer, *supra*, at 9.** Furthermore, the Government argues that while the letters may be sufficient to establish that Petitioner did not have counsel at the proceeding which the witnesses attended, such letters do not establish that Petitioner did not, at some other time, validly waive his right to counsel. ***Id*., at 13.** Therefore, the Government contends the subject statements do not support Petitioner's contention that the assault conviction was unconstitutionally obtained, or that counsel was

ineffective for failing to call these three witnesses to testify concerning those matters. *Id*.

The Government also submitted an affidavit from Petitioner's trial attorney, Richard Deke Falls, in support of its summary judgment motion. *See* **Exhibit 7,** *attached to* **Government's Answer.** The affidavit shows Falls researched the circumstances of Petitioner's 1990 assault conviction in response to Petitioner's assertion that he did not have an attorney or waive such representation at the time he entered a guilty plea to that charge. *Id.*, **at 1**. Falls avers he could not obtain actual copies of the court documents due to the fact that the "'shuck,' or file containing the original documents from the 1990 case, had been destroyed." *Id*. Therefore, there was no documentary evidence from the case which he could have presented to this Court to support Petitioner's claim that his conviction was unconstitutionally obtained. *Id*.

Falls further avers that Petitioner was aware he had filed an objection to the 1990 conviction being used to enhance Petitioner's sentence and that "we would have to convince the court to sustain our objection." *Id*. Yet, according to Falls, the Petitioner never advised him there were any witnesses who could support the claim that he was without counsel during

the 1990 state court proceedings. *Id*. Falls further avers that as

Petitioner's attorney in his 2002 federal bank robbery cases, he had no

legal or ethical obligation to attack Petitioner's 12-year-old state court

assault conviction; and that if Petitioner thought that conviction was

unlawful, it was his obligation to mount such a challenge in state court. *Id.,*

**at 2.** Finally, Falls avers:

> It is my belief that I did everything I could to present our
> argument at sentencing, and on appeal, that Mr. Barkley's 1990
> conviction was invalid. Unfortunately, the district court did not
> find Mr. Barkley to be a credible witness, and the court of
> appeals found no error in the district court's findings of fact or
> law.

*Id*. Consequently, the Government argues that it is entitled to a summary

judgment as a matter of law.

In response to the Court's Order pursuant to *Roseboro v. Garrison*,

528 F.2d 309 (4th Cir. 1975), Petitioner filed response to the Government's

motion for summary judgment. **Petitioner's Response to Respondent's**

**Motion for Summary Judgment, filed December 18, 2007.** Attached to

that response, Petitioner submitted newly-crafted declarations from the

three witnesses, Causby, Johnson, Kirk, contending that these statements

now establish that he did not waive his right to counsel. ***See* Exhibit B,**

**Declaration of Joyce Causby, Exhibit C, Declaration of Mamie**

**Johnson, and Exhibit D, Declaration of Cande S. Kirk,** *attached to*

**Petitioner's Response.** Petitioner also included his own declaration to

support the allegations set forth in his § 2255 motion and in response to

the Government's motion for summary judgment. *See* **Exhibit A,**

**Declaration of John C. Barkley,** *attached to* **Petitioner's Response.**

Having carefully reviewed the Petitioner's claims, his arguments and

that of the Government, along with the exhibits submitted, and the relevant

legal precedent, the Court finds the Government's motion for summary

judgment should be granted.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a Court may grant

summary judgment when the pleadings and other relevant documents

reveal that "there is not genuine issue as to any material fact and . . . the

moving party is entitled to a judgment as a matter of law." **See, e.g.**

**Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23 (1986); **Anderson v.**

**Liberty Lobby, Inc.**, 477 U.S. 242, 252 (1986); **Matsushita Elec. Indus.**

**Co. v. Zenith Radio Corp.**, 475 U.S. 574, 587 (1986); **Miller v. Leathers**,

**913 F.2d 1085, 1087 (4th Cir. 1990).**

A genuine issues exists only if "the evidence is such that a reasonable jury could return a verdict for the on-moving party." ***Anderson, 477 U.S. at 248.*** However, the party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a "mere scintilla of evidence" is insufficient to overcome summary judgment." ***Id.* at 249-50.**

_____

## III. ANALYSIS

**A. Petitioner's claim of plain error is not cognizable**.

As noted *supra*, Petitioner argued at sentencing that his 1990 assault conviction was obtained in violation of his constitutional right to the assistance of counsel. However, the undersigned determined that Petitioner's less than credible testimony, along with several other factors, precluded his ability to overcome the presumption that the 13-year-old conviction lawfully was obtained. **Sentencing Transcript, *supra*, at 35-36**. The Fourth Circuit affirmed this Court's ruling in that regard. ***Barkley*, 100 F. App'x at 901**. Nevertheless, Petitioner now argues both this Court and the Fourth Circuit erred in evaluating his testimony on that issue.

However, the law is well settled that in the absence of a favorable, intervening change in the law which can be applied on collateral review,

Petitioner simply is not free to re-litigate claims which have been rejected on direct review. ***Davis v. United States*, 417 U.S. 333, 342 (1974); *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976)**.

In this regard, Petitioner relies on the rulings set forth in *Apprendi* and its progeny to show that there has been a change in law which authorizes him to re-litigate this claim. However, relevant legal precedent clearly establishes that the holdings from the *Apprendi* line of cases are <u>not</u> retroactively applicable on collateral review. ***See United States v. Morris*, 429 F.3d 65, 72 (4th Cir. 2005) (holding that the rule from *Booker* is not retroactively applicable on collateral review); *United States v. Sanders*, 247 F.3d 139, 147-48 (4th Cir. 2001) (holding that the rule from *Apprendi* is not retroactively applicable on collateral review); *see also Lily v. United States*, 342 F. Supp. 2d 532, 537-39 (W.D. Va. 2004) (rejecting an argument that *Blakely* could be applied on collateral review**); ***United States v. Fowler*, 133 F. App'x 922, 923 (4th Cir. 2005) (denying a request under 28 U.S.C. § 2244 for authorization of a successive motion to vacate, finding that "neither *Booker* nor *Blakely* announced a new rule of constitutional law made retroactive by the Supreme Court to cases on collateral review."**). Accordingly,

inasmuch as Petitioner has not directed the Court's attention to any intervening change which is applicable here, he simply is not entitled to re-litigate the question of whether he presented sufficient evidence to establish that his 1990 conviction was unlawfully secured.

**B. Petitioner's claims against counsel are baseless**.

With respect to claims of ineffective assistance of counsel, Petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, <u>and</u> that he was prejudiced thereby. ***Strickland v. Washington*, 466 U.S. 668, 687-91 (1984)**. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. ***Id*. at 689; *see also Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Hutchins v. Garrison*, 724 F.2d 1425, 1430-31 (4th Cir. 1983); *Marzullo v. Maryland*, 561 F.2d 540 (4th Cir. 1977)**.

To demonstrate prejudice, Petitioner must show a probability that the alleged errors worked to his "'actual and substantial disadvantage, infecting his trial with error of constitutional dimensions.'" ***Murray v.***

***Carrier*, 477 U.S. 478, 494 (1986) (quoting *United States v. Frady*, 456 U.S. 142, 170 (1982)).** Under these circumstances, Petitioner "bears the burden of proving *Strickland* prejudice." ***Fields*, 956 F.2d at 1297 (citing *Hutchins*, 724 F.2d at 1430-31).** Therefore, if Petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." ***Id.* at 1290 (citing *Strickland*, 466 U.S. at 697)**.

Moreover, in considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. ***Sexton v. French*, 163 F.3d 874, 882 (4ᵗʰ Cir. 1998)**. Rather, the Court "can only grant relief under . . . *Strickland* if the 'result of the proceeding was fundamentally unfair or unreliable.'" ***Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).** Nevertheless, it must firmly be kept in mind that "effective representation is not synonymous with errorless representation." ***Springer v. Collins,* 586 F.2d 329, 332 (4ᵗʰ Cir. 1978)**. Similarly, the requirement "[t]hat a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing." ***McMann v. Richardson*, 397 U.S. 759, 770 (1970)**.

Finally, because two of Petitioner's claims allege that counsel performed deficiently at sentencing, in order to demonstrate an entitlement to relief on those matters, he must, at a minimum, allege facts which establish that his "sentence would have been more lenient" absent counsel's errors. ***Royal v. Taylor*, 188 F.3d 239, 248-49 (4th Cir. 1999)**.

Petitioner alleges that his attorney was ineffective for having failed to preserve an argument under *Apprendi*[2] that the indictment's failure to allege an express threat of death precluded the Court from imposing an enhancement based on that fact. However, in July 2003, when Petitioner was sentenced, the Sentencing Guidelines expressly mandated the two-point enhancement for threats of death pursuant to § 2B3.1(b)(2)(F). Furthermore, although *Apprendi* was decided in 2000, at the time that this Court sentenced Petitioner, the Fourth Circuit had not determined that *Apprendi* precluded the subject enhancement.

In 2003, the Fourth Circuit was construing *Apprendi's* reference to the "statutory maximum" as the maximum sentence provided by statute

---

[2] In *Apprendi*, the Supreme Court held that any factor other than a prior conviction, which increases the statutory maximum is an element of the offense which must be charged in the indictment and submitted to a jury for proof beyond a reasonable doubt, or admitted by the defendant.

when additional judge-made findings were used.  In fact, in the years prior to Petitioner's sentencing, the Fourth Circuit affirmed sentences which included uncharged sentencing enhancements, so long as those sentences did not exceed the maximum term which could have been imposed when such additional judge-made findings were included.  ***See United States v. Lewis*, 235 F.3d 215, 218-19 (4th Cir. 2000) (upholding the imposition of uncharged sentence enhancements which did not increase the sentence beyond that provided for by the statute of conviction); *United States v. Kinter*, 235 F.3d 192, 198-202 (4th Cir. 2000) (same)**.

Such practice continued in 2004 based upon the Fourth Circuit's conclusion that the holding in *Blakely v. Washington*, 542 U.S. 296 (2004),[3] did not invalidate the foregoing Guidelines' sentencing practices.  ***See United States v. Hammoud*, 378 F.3d 426 (4th Cir.), *vacated and remanded*, 381 F.3d 316 (4th Cir. 2004)**.  Thus, it was not until 2005 – long after Petitioner was sentenced and his case was affirmed on appeal –

---

[3] The *Blakely* decision clarified that for *Apprendi* purposes, the statutory maximum term was the maximum sentence that a state court could impose "solely on the basis of the facts reflected in the jury's verdict or admitted by the defendant."

when the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220

(2005),[4] invalidated sentencing enhancements like the one at issue here.

Accordingly, since the law was understood to permit the subject

enhancement during all time periods relevant to this case, counsel simply

could not have been ineffective for having chosen not to challenge the

Court's inclusion of that enhancement. Therefore, on these facts,

Petitioner cannot establish deficient conduct on the part of trial counsel.

Petitioner also alleges that counsel was ineffective for allowing him to

plead guilty without a plea agreement. He claims that "under the standards

of *Booker*, [he] would have insisted on going to trial" had counsel not

recommended that he plead guilty without an agreement to exclude the

two-point enhancement under § 2B3.1(b)(2)(F) and the career offender

designation. However, as is apparent from the preceding discussion, the

ruling from *Booker* was not announced until <u>after</u> Petitioner's case was

concluded. Furthermore, *Booker's* progenitors did not preclude either of

the subject enhancements.

---

[4] *Booker* holds, *inter alia*, that the mandatory provisions of the Guidelines are invalid to the extent that they permit a judge to find facts relevant to sentencing in violation of the defendant's Sixth Amendment right to have a jury determine every fact that is relevant to sentencing.

Additionally, Petitioner stated under oath during his plea and Rule 11 hearing that he was satisfied with his attorney's services. Such satisfaction, necessarily, would have covered all of counsel's services up to that point, including his advice that Petitioner enter guilty pleas to the bank robbery charges without benefit of a plea agreement. Therefore, Petitioner's claim is both factually and legally baseless.

Petitioner also claims, essentially in passing, that counsel was deficient for having promised him a lower sentence, and for failing to inform him that he could have withdrawn his guilty pleas "pursuant to Rule 11(d)(1) or (2), prior to sentencing or for any reason at all." **Petitioner's Motion, at 16-17**. This claim is clearly refuted by the record.

First, in response to the Court's careful questioning during his plea and Rule 11 proceeding, Petitioner, under oath, stated he understood he was entering guilty pleas which could not later be withdrawn, he understood that although he had spoken to his attorney about how the Guidelines might apply to his case, no one could determine his sentencing range until <u>after</u> his presentence report was prepared, and he understood that in some circumstances, he could receive a sentence that was more severe than he expected, but he would remain bound by and have no right

to withdraw his guilty pleas.  **Rule 11 Inquiry, *supra*, at 2**.  Petitioner also stated under oath that no one had promised him a lenient sentence in order to induce his guilty pleas.  ***Id*. at 3**.  Therefore, this allegation is without merit.

Second, a defendant is not entitled to withdraw his guilty plea even where he can show it was entered based upon his attorney's mistaken advice that he was going to receive a significantly lower sentence than the one which was imposed.  ***United States v. Lambey*, 974 F.2d 1389, 1394-96 (4th Cir. 1992).**  Accordingly, even if Petitioner's attorney erred in his sentencing predictions, on this record Petitioner cannot establish either that he would have been entitled to withdraw his pleas or, more significantly, that he was prejudiced by counsel's performance.

Last, Petitioner claims counsel was deficient for failing to investigate and procure proof that his 1990 conviction was unconstitutionally obtained. In response to Petitioner's claim that counsel should have taken action to "obtain[] the State of North Carolina charging documents," counsel has filed an affidavit establishing that he did attempt  to secure Petitioner's file, but was unsuccessful because the file had been destroyed.  ***See* Falls**

**Affidavit,** *supra*.  Petitioner has not attempted to rebut this evidence; therefore, he cannot prevail on this point.

Petitioner also claims that counsel failed to present witnesses who could have established that the subject conviction was uncounseled. Again, however, counsel's affidavit conclusively rebuts this allegation. Falls' affidavit states – and Petitioner does not deny – that although Petitioner was aware that he had the burden of establishing that the conviction was unconstitutional, he never advised Falls that he had witnesses who could have supported his contention.  *Id*.  Thus, counsel could not possibly have been deficient for failing to produce evidence which Petitioner should have, but failed to, disclose to his attorney.

Furthermore, it is not altogether clear that the three witnesses Petitioner proffers could have provided evidence to establish that the 1990 conviction was unlawful and, therefore, not subject to inclusion in Petitioner's sentencing calculations.  Viewing the witnesses' statements in their best light tends to establish that Petitioner did not have an attorney at the 1990 proceeding.  These statements, however, do not establish that Petitioner did not, at some earlier time, validly waive his right to an attorney.  Indeed, each  witness reports that no attorney appeared for

Petitioner during the proceeding.  Yet, as the Government argues, the

witnesses are silent as to any knowledge they may have had concerning

whether Petitioner had only that one proceeding in connection with the

assault charge.  In fact, Petitioner has been less than forthcoming on that

point.  Although he now contends that he did not waive his right to counsel

at some earlier point, Petitioner was far less certain of that fact during his

sentencing hearing.

(Direct Examination)
Q:  Now, did you end up pleading guilty or did you
have a trial?
A:  I pleaded guilty.
Q: You pled guilty?
A: Um-hum.
Q: Did you have a lawyer with you at that time?
A: No.
Q: Had you ever signed a waiver, waiving your right
to have a lawyer?
A: No, not that I know of.
Q: Had you ever requested – did you request a
court-appointed lawyer in that case; do you recall?
A: I can't remember if I did or not.
Q: Do you know whether you were ever assigned a
lawyer?
A: Not that I know of.

(Cross Examination)

Q: Or it's also possible you may have gone to a first
appearance court where you signed a waiver,
waiving your right to an attorney, too.  Isn't that
possible?

A: Not that I remember.

. . . .

Q: You're sure you didn't sign that form, but you're not sure how you got your court date.  Is that correct?
A: Yes.

**Sentencing Transcript, *supra*, at 21-24**.

Furthermore, the witnesses' statements do not explain where they were seated in the courtroom during these proceedings nor how they were able to observe what documents Petitioner did or did not execute during that proceeding.   As such, the statements are not particularly helpful as they do not conclusively "set out facts that would be admissible in evidence, and show that [the witnesses] are competent to testify on the matters stated;" in other words, these statements do not show that Petitioner did not execute a waiver during the hearing they attended or, more critically, that he did not previously execute such a waiver.  **Fed. R. Civ. P. 56(e)**.  Based upon all of the foregoing,  Petitioner cannot establish that his attorney was ineffective for not having called these three witnesses during his sentencing hearing.

## IV.  ORDER

**IT IS, THEREFORE, ORDERED** that the Government's motion for summary judgment is **ALLOWED**, and Petitioner's § 2255 motion is **DENIED.**  A Judgment dismissing this action is filed herewith.

Signed: June 10, 2009

Lacy H. Thornburg
United States District Judge